IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07–cv–01074–PAB–KMT

JEFFREY MICHAEL KROGSTAD,

       Applicant,

v.

RON LEYBA, Warden, and
ATTORNEY GENERAL OF THE STATE OF COLORADO,

       Respondents.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

       This case comes before the court on Petitioner's Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Application") (Doc. No. 3, filed May 22, 2007).  Pursuant to the Order of Reference dated June 20, 2007 (Doc. No. 8), this court has reviewed the Application, Respondents' Answer ("Answer") (Doc. No. 13, filed July 20, 2007), Petitioner's Reply ("Traverse") (Doc. No. 15, filed August 7, 2007), the pertinent parts of the state court record, the case file, and the applicable law, and is sufficiently advised to recommend that Petitioner's Application be DISMISSED WITH PREJUDICE.

# I.   BACKGROUND

Petitioner is currently incarcerated at the Arrowhead Correctional Center of the Colorado

Department of Corrections in Canon City, Colorado.  (Application at 23.)  This portion of the

case history is taken verbatim from the Colorado Court of Appeals' ("CCA") Order affirming the

trial court's order in *People v. Krogstad*.  (Answer, App. J [Colo. Ct. App. No. 04CA1613, Nov.

30, 2006) (unpublished)] at 3–5.)

> In case number 79CR518 after a jury trial defendant was convicted of
> robbery and attempted robbery, and he pleaded guilty to four habitual criminal
> counts (1979 case).  He was sentenced to two concurrent life sentences.  The
> judgment of conviction was affirmed on appeal.  *People v. Krogstad*, (Colo. App.
> No. 80CA1224, Oct. 21, 1982) (not published pursuant to C.A.R. 35(f)).
>
> Alleging ineffective assistance of counsel, defendant filed a motion in
> 1983 to withdraw his guilty pleas, to vacate judgment, and to set aside the
> sentence in the 1979 case.  The trial court denied this motion, and defendant
> appealed.  A division of this court granted a limited remand with instructions to
> hold a hearing on his postconviction motion.
>
> No hearing was held, however.  Upon remand, the parties agreed in 1985
> that (1) the convictions for robbery and attempted robbery would remain intact;
> (2) defendant would withdraw his guilty pleas to the habitual criminal counts; (3)
> the habitual criminal counts would be dismissed; (4) the prosecution would add
> two new felony charges, menacing and attempted robbery; (5) defendant would
> plead guilty to the new charges; and (6) he would receive a stipulated sentence of
> nineteen and a half years imprisonment.  After the court accepted and the parties
> complied with the plea disposition, defendant dismissed the appeal of his
> postconviction motion.
>
> In 1998, defendant was charged in 98CR854 with aggravated robbery
> (1998 case). The jury found him guilty as charged, the trial court adjudicated him
> a habitual criminal based on three prior felony convictions, and he was sentenced
> to thirty-two years imprisonment.
>
> Defendant filed a Crim. P. 35(c) motion pertaining to his 1998 conviction
> and a motion in the 1979 case to withdraw his 1985 guilty pleas, vacate the
> judgment, and set aside that sentence.  The trial court denied this motion, and
> defendant appealed.  A division of this court affirmed the judgment, reversed the
> order, and remanded for further proceedings because the trial court lacked
> jurisdiction to accept defendant's pleas upon the added counts in the 1985

agreement.  The division determined that the added counts charged defendant with felonies arising out of the same incident that gave rise to the convictions in the 1979 case.  *People v. Krogstad*, (Colo. App. Nos. 99CA0150 & 99CA0345, Apr. 3, 2003) (not published pursuant to C.A.R. 35(f)).

On remand, the trial court determined that (1) by withdrawing from the 1985 agreement, defendant breached the agreement and (2) the parties should be returned to their pre-1985 agreement posture.  Therefore, in the 1979 case, the aggravated robbery conviction, the attempted robbery conviction, the habitual counts guilty plea, the two life sentences, and the Crim. P. 35(c) motions claiming ineffective assistance of counsel were reinstated.

The trial court nevertheless denied both postconviction motions.  The court reviewed the transcripts, the exhibits, and its file in the 1979 and 1998 case convictions.  Defendant called as witnesses the attorneys who represented him in the various trial proceedings, a prosecutor, and a former prosecutor.  Throughout the hearings, defendant referred to, and had witnesses read from, the trial transcripts in the cases, but those transcripts are not in the record on appeal.

(App. J at 3–5.)

The CCA affirmed the trial court's order denying Petitioner's motions.  (App. J at 20.) The Colorado Supreme Court denied review on March 12, 2007 (Answer, App. L), and the mandate issued on March 19, 2007 (Answer, App. M).

Petitioner filed his present Application on May 22, 2007, asserting the following ten claims related to his 1998 conviction: (1) his Sixth Amendment right to counsel was violated; (2) he was denied his constitutional right to a jury trial on the habitual criminal counts; (3) the trial court did not have jurisdiction over one of his habitual criminal counts; (4) his counsel failed to object to an improper jury instruction; (5) his counsel failed to request a juror be excused for cause; (6) his counsel failed to obtain records of felony convictions for one of the prosecution witnesses; (7) his counsel erroneously withdrew a tendered jury instruction for a lesser included charge of attempted robbery; (8) his counsel failed to protect his right to an expert on

identification issues; (9) his counsel failed to protect his right to suppress a witness's in-court

identification; and (10) his counsel failed to introduce the 911 recording for the purpose of

suppressing witnesses' identification and impeaching their testimony.  (Application at 5, 18–20.)

## II.    LEGAL STANDARDS

### A.    Pro Se *Petitioner*

Petitioner is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also*

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A

court may not assume that a Petitioner can prove facts that have not been alleged, or that a

defendant has violated laws in ways that a Petitioner has not alleged.  *Associated Gen.*

*Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also*

*Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply

additional factual allegations to round out a [Petitioner's] complaint"); *Drake v. City of Fort*

*Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or

theories for the [Petitioner] in the absence of any discussion of those issues").  The Petitioner's

*pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296

F.3d 952, 957 (10th Cir. 2002).

**B.**     *Title 28 U.S.C. § 2254*

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999). A decision is contrary to Federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A decision involves an unreasonable application of Federal law when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly. Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

In addition, a presumption of correctness exists regarding trial and appellate court findings of fact pursuant to this Court's habeas review. *Sumner v. Mata*, 455 U.S. 591, 592–93 (1982). As such, Petitioner bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). Federal courts must "face up to any disagreement as to the facts and to defer to the state court . . . ." *Sumner*, 455 U.S. at 597–98.

### III.    ONE-YEAR LIMITATION PERIOD FOR FILING APPLICATION FOR FEDERAL HABEAS RELIEF

Respondents do not challenge the timeliness of the Application under the one-year limitation period set forth in 28 U.S.C. §2244(d)(1).

### IV.    EXHAUSTION OF CLAIMS IN STATE COURT AND PROCEDURAL DEFAULT

Respondents argue that Petitioner has failed to exhaust Claims 4, 6, 8, and 9, and has procedurally defaulted Claim 3.  Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the petitioner's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1534 (10th Cir. 1994).  A claim has been exhausted when it has been "fairly presented" to the state court.  *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.

Moreover, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement.  *Picard*, 404 U.S. at 278; *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989).  Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts."  *Anderson v. Harless*, 459

6

U.S. 4, 6 (1982) (per curiam).  In order for a state prisoner to establish that he is entitled to

federal relief, the decision of the last state court to which the petitioner presented his claims must

fairly appear to rest on primarily issues of federal law or to be interwoven with federal law.

*Coleman v. Thompson*, 501 U.S. 722, 735 (1991).  "[F]or purposes of exhausting state remedies,

a claim for relief in habeas corpus must include reference to a specific federal constitutional

guarantee, as well as a statement of facts that entitle the petitioner to relief."  *Gray v. Netherland*,

518 U.S. 152, 162–63 (1996).  Finally, "[t]he exhaustion requirement is not one to be overlooked

lightly."  *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing

a federal habeas corpus action bears the burden of showing that he has exhausted all available

state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

### A.       28 U.S.C. § 2254(b)(1)—Exhaustion of State Court Remedies

Respondents assert Petitioner failed to raise Claims 4, 6, 8, and 9 in his petition for

review to the Colorado Supreme Court, and as a result he has failed to exhaust his state court

remedies with respect to those claims.  Under Colorado Appellate Rule 51.1, which became

effective on May 18, 2006,

> [i]n all appeals from criminal convictions or postconviction relief matters from or
> after July 1, 1974, a litigant shall not be required to petition for rehearing and
> certiorari following an adverse decision of the Court of Appeals in order to be
> deemed to have exhausted all available state remedies respecting a claim of error.
> Rather, when a claim has been presented to the Court of Appeals or Supreme
> Court, and relief has been denied, the litigant shall be deemed to have exhausted
> all available state remedies.

Colo. App. R. 51.1(a).  Respondents argue that Rule 51.1 does not affect the federal habeas

exhaustion requirement because a criminal defendant still may seek review by the Colorado

7

Supreme Court after Rule 51.1 became effective.  Respondents also assert that if review by the Colorado Supreme Court is available to a criminal defendant, a defendant must pursue such review to satisfy the requirement that a defendant "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas relief.  *O'Sullivan*, 526 U.S. at 845.

Four United States Courts of Appeals, applying *O'Sullivan*, have determined that state rules similar to Colo. App. R. 51.1 effectively eliminate the need to seek review in the state's highest court in order to satisfy the federal habeas exhaustion requirement.  *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004); *Adams v. Holland*, 330 F.3d 398, 401–03 (6th Cir. 2003); *Randolph v. Kemna*, 276 F.3d 401, 404–05 (8th Cir. 2002); *Swoopes v. Sublett*, 196 F.3d 1008, 1009-10 (9th Cir. 1999).  This court agrees with the analyses in these cases and other courts in this District and finds that Rule 51.1 eliminates the requirement that a defendant seek discretionary review by the Colorado Supreme Court before a federal habeas corpus case may be brought.  *Id.  See also Gordon v. Arellano*, Civ. Action No. 08-cv-02538-BNB, 2009 WL 1575324, at *4–5 (D. Colo. June 4, 2009); *Cournoyer v. Ortiz*, Civ. No. 06-cv-00928-REB, 2009 WL 1473024, at *8–9 (D. Colo. May 26, 2009).

Petitioner presented Claims 4, 6, 8, and 9 to the CCA as federal claims.  (*See* Answer, App. G at 13, 15, 21.)  Under Colo. App. R. 51.1, this is sufficient to "give the [Colorado] courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  Accordingly, this court finds Petitioner has exhausted Claims 4, 6, 8, and 9.

8

**B.** *Procedural Default of Unexhausted Claims*

Respondents argue that Petitioner's Claim 3 is procedurally defaulted because he failed to present it to the CCA as a federal constitutional question. (*See* Answer, Apps. G at 12–13; I at 9–10.)  Upon review of Petitioner's Rule 35(c) motion and his opening brief on post-conviction appeal, this court finds that claim three was not presented as a federal constitutional claim during Petitioner's state court proceedings. (*See* State Court Record, *State v. Krogstad*, 98CR854 [hereinafter "98CR854"], Def.'s Argument in Supp. of Postconviction Mot. at 10–11; Answer, App. G at 12–13.)  The claim, as set forth, does not satisfy the fair presentation requirement for the simple reason that Petitioner failed to connect these issues to any claim under federal law. Petitioner did not cite to any specific provision of the federal Constitution, he relied in large part on Colorado state law, and he did not label the claims as "federal" claims. *See Baldwin v. Reese*, 541 U.S. 27, 32–33 (2004).  Petitioner failed to set forth any argument which would have alerted the state appellate court to particularized claims of violations of his federal constitution rights such as those he brings in this court.  Moreover, the State of Colorado did not recognize or treat Petitioner's claim as raising any federal constitutional questions. (*See* Answer, App. H at 24–25.)  The CCA also reviewed these claims as solely raising issues of state law, not as federal constitutional issues. (*See* Answer, App. J at 6–7.)

In order to allow the state courts the opportunity to act on or correct the constitutional violations Petitioner alleges, he must provide legal theory explaining how the decisions of the state court violated the particular federal constitutional rights he claims were violated. *See, e.g., Anderson*, 459 U.S. at 78 (claim on direct appeal that jury instruction was reversible error did not

9

fairly present due process challenge to instruction for habeas exhaustion purposes); *Picard*, 404 U.S. at 276–77 (holding that habeas petitioner failed to fairly present federal claim to state court where, despite presenting all necessary facts, petitioner failed to assert specific argument that he later tried to raise in federal court); *see also Thomas v. Gibson*, 218 F.3d 1213, 1221 n.6 (10th Cir. 2000) (holding that petitioner's general state court claim was insufficient to exhaust his later, more specific federal habeas claim). Finally, the fact that Petitioner specifically cited or referred to the federal Constitution or federal case law in connection with various other claims in his direct appeal, his Rule 35(c) motion, and his opening brief on post-conviction appeal further illustrates that he did not present Claim 3 as a federal constitutional claim. Accordingly, this court finds Petitioner failed to exhaust state remedies for Claim 3.

"Generally, when a habeas petitioner has failed to exhaust his state court remedies, a federal court should dismiss the petition without prejudice so that those remedies may be pursued." *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997). However, "if the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992) (citation omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"Subject to enumerated exceptions, claims that could have previously been brought on direct appeal or in postconviction proceedings must be denied." *People v. Valdez*, 178 P.3d 1269, 1275 (Colo. App. 2007) (citing Colo. R. Crim. P. 35(c)(3)(VII)). Petitioner's third claim could have been raised on his direct appeal to the Colorado Court of Appeals. Thus, none of the

10

specifically enumerated exceptions to Colorado's successive post-conviction motions rule apply to Petitioner's third claim.  Accordingly, pursuant to Colo. R. Crim. P. 35(c)(3)(VII), because Petitioner could have brought this claim on direct appeal, but failed to do so, any future assertion of this claim in a post-conviction motion would be denied as successive in state court. Therefore, because no further state court remedy exists, Petitioner's unexhausted third claim is procedurally defaulted in this court.

### C.      *Exceptions to Procedural Default*

The court must next determine whether an exception to the procedural default rule applies that would allow Petitioner's third claim to be heard here.  Claims which have been procedurally defaulted must be dismissed with prejudice unless the prisoner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. 722, 749–50; *see also Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).  Petitioner's *pro se* status does not exempt him from the requirement of showing either cause and prejudice or a fundamental miscarriage of justice.  *Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

In order to meet the "cause" element of the cause and prejudice standard, a Petitioner must show that "some objective factor external to the defense" caused his failure to properly raise his federal constitutional claims in state court.  *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Lepiscopo*, 38 F.3d at 1130.  The far more stringent test to excuse procedural default, the fundamental miscarriage of justice exception, is an "extremely narrow exception, implicated

only in an extraordinary case, 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir.1999) (quoting *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (quoting *Murray*, 477 U.S. at 496)).  To invoke the fundamental miscarriage of justice exception, a petitioner must "provide[] the court with a colorable showing of factual innocence."  *Beavers v. Saffle*, 216 F.3d 918, 928  n.3 (10th Cir. 2000) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

Petitioner fails to provide any basis for a finding of cause and prejudice or a fundamental miscarriage of justice in this action.  Therefore, this court finds that Claim 3, which Petitioner failed to exhaust, is procedurally barred.

## V.      ANALYSIS ON THE MERITS

This court finds that Petitioner's Claims 1, 2, and 4 through 10 were fairly presented as federal constitutional claims to the state courts and, therefore, will review the merits of each claim, as set forth below.

### A.      Claim One

Petitioner claims his Sixth Amendment right to effective assistance of conflict-free counsel was violated.  (Application at 5–17.)  A criminal defendant's Sixth Amendment right to effective assistance of counsel, which is rooted in "the fundamental right to a fair trial," *Strickland v. Washington*, 466 U.S. 668, 684 (1984), includes the right to conflict-free representation.  *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).  If there is no waiver of the conflict of interest, or where a waiver is invalid, automatic reversal is required "only where

defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." *Mickens v. Taylor*, 535 U.S. 162, 168 (2002).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the petitioner was prejudiced as a result. *Strickland*, 466 U.S. at 687. Where a criminal defendant must affirmatively prove prejudice to succeed on an actual ineffectiveness claim based on deficient performance, *id.*, 466 U.S. at 693, "prejudice is presumed when counsel is burdened by an actual conflict of interest," *id.* at 692. The Supreme Court has explained, however, that this is not a "*per se* rule of prejudice." *Id.* Instead, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler*, 446 U.S. 335, 350, 348).

Here, one of Petitioner's co-counsel in the 1998 case, Attorney Jerome Roselle, represented the prosecution during Petitioner's 1985 plea negotiations. (*See* 98CR854 Tr., Feb. 13, 2004 Rule 35(c) Hr'g at 36–77, 243–257.) Attorney Roselle testified at the Rule 35(c) hearing that he became aware he represented the People of the State of Colorado in plea negotiations for the 1985 case when, in the summer of 1998, Petitioner pointed out that Attorney Roselle's name was on the record of conviction for the 1985 case. (*Id.* at 46.)

The state court record reflects that Attorney Roselle represented Petitioner in a separate case, Larimer County District Court Case No. 98CR669. (98CR854, Mot. for Appt. of Co-Counsel filed Sept. 15, 1998.) Attorney Christian, Petitioner's counsel in Case No. 98CR854, moved the court for the appointment of Attorney Roselle as co-counsel. (98CR854, Mot. for

Appt. of Co-Counsel, filed Sept. 15, 1998.)  Judge James Hiatt, the presiding judge in Case No.

98CR854, granted the motion on September 15, 1998.  (*Id.*, Order for Appt. of Co-Counsel.)  On

September 21, 1998, Attorney Roselle advised Judge William Dressel, the presiding judge in

Case No. 98CR669, that he was concerned because he had been a prosecutor on one of the

defendant's habitual counts.  (98CR669 Tr., Sept. 21, 1998 Hr'g at 2–5.)  Attorney Roselle

suggested that co-counsel be appointed for the issue of filing motions related to the habitual

counts.  (*Id.* at 2–3.)  Judge Dressel appointed Attorney Lee Christian for the purpose of

addressing the habitual counts.  (*Id.* at 5.)

 Both Attorneys Christian and Roselle represented Petitioner through trial, apparently

without any objection by Petitioner, and on October 21, 1998, Petitioner was convicted of

Attempt to Commit the Crime of Aggravated Robbery.  (98CR854 Tr., Trial Day Three, Oct. 21,

1998, at 82.)  Judge Hiatt set a hearing on the habitual counts to be held on October 29, 1998.

(*Id.* at 85.)  At the beginning of the October 29, 1998 hearing, Petitioner, acting *pro se*, gave the

trial court a motion seeking the removal of both Attorney Roselle and Attorney Christian based

on alleged ineffective assistance of counsel and conflict of interest.  (98CR854, Motion Claiming

Ineffective Assistance of Counsel and Conflict of Interest, filed Oct. 29, 1998.)  Petitioner stated

at the hearing that he believed "Mr. Roselle, having been the prosecutor in a former case, should

not be representing me in – in this matter as far as habitual criminal."  (98CR854, Tr., Oct. 29,

1998 Hr'g at 8, ll. 8–12.)  Judge Hiatt stated it was his understanding that the conflict-of-interest

matter had been raised previously and that there was a waiver of some possible conflict at that

time.  (*Id.* at 9, ll. 12–19.)  Attorney Roselle stated that the issue had been raised before Judge

Dressel and that it was his understanding there was a waiver with regard to the substantive trial but not as to the any conflict with regard to his representation on the habitual phase.  (*Id.* at 10, ll. 3–21.)  Judge Hiatt ordered that Attorney Roselle be withdrawn as Petitioner's counsel on the habitual counts, stating as follows:

> As far as Mr. Roselle is concerned, we are now at the habitual state of this case, where the People will attempt to prove prior convictions.  Mr. Roselle apparently was counsel of record on one of those convictions, and I think that does present a conflict of interest . . . .  I think that if we did go ahead that I'm confident Mr. Roselle would act absolutely as best he could to defend Mr. Krogstad, and there – I don't believe that there would be actual prejudice.  But there certainly is the appearance of impropriety . . . .

(*Id.* at 14, ll. 4–21.)

> In his Order regarding Petitioner's Rule 35(c) motion, Judge Hiatt stated as follows:

> [T]he claims of Defendant [regarding the conflict-of-interest issue] have not been proved.  At worst, as noted by Judge Dressel when he directed that Mr. Roselle not be involved in the 1998 habitual phase, Mr. Roselle had an appearance of a conflict . . . .  In actual fact, the work done for Defendant in the 1998 case, by Mr. Roselle, was vigorous, zealous, and of excellent quality.  Moreover, once the appearance of a conflict came to light Mr. Roselle had no further involvement witth [sic] the habitual phase . . . .
>
> The issue or claim is . . . wholly unproved and unsubstantiated.  In point of fact Roselle had no actual conflict and very competently represented Mr. Krogstad.  Finally, the Court finds that the apparent or perceived conflict was waived by Defendant.  In argument, he denies this, but the evidence convinces the Court that it was called to his, and the judge's, attention, and duly waived. Indeed, there is more than a hint in the evidence of Mr. Krogstad's desire to waive the objection to some extent, but ambiguously enough so that, if necessary, he could preserve the issue for later use on appeal.  In fact, the Court finds that there was at worst the appearance, only, of a conflict, not an actual conflict, and that apparent conflict was waived.

(98CR854, Order, filed Jul. 26, 2004.)  The CCA, citing *People v. Kenny*, 30 P.3d 734 (Colo. App. 2000), also determined Petitioner had waived any conflict of interest.  (Answer, App. J at 18–20.)

Based on a careful review of the record in this case, this court finds that Petitioner has failed to demonstrate that he received ineffective assistance of counsel based on a conflict of interest.  Nothing in the record indicates Petitioner objected to Attorney Roselle's ongoing representation until the conclusion of trial and at the beginning of the hearing on the habitual criminal counts.  Therefore, the CCA's determination that Petitioner had waived any conflict of interest was a reasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2).  Moreover, Petitioner has not shown that any alleged conflict adversely affected Attorney Roselle's performance or affected the adequacy of his representation.  *See Mickens*, 535 U.S. at 172–73.  Petitioner has not satisfied either the deficient performance or prejudice prongs of the *Strickland* standard.  Because Petitioner has demonstrated neither an actual conflict on the part of his counsel nor any adverse effects of a potential conflict of interest, this court concludes that Petitioner has not shown that the state courts' adjudication of this claim was contrary to or an unreasonable application of federal law as determined by Supreme Court.  *See* 28 U.S.C. § 2254(d).  Thus, Petitioner is not entitled to habeas corpus relief on this ground.

**B.**   ***Claim Two***

Petitioner claims he was denied his constitutional right to jury trial on the habitual criminal counts — specifically that a jury should have determined the element of identity with regard to his prior convictions.  (Application at 18.)  The CCA, citing *People v. Nunn*, 148 P.3d

16

222 (Colo. App. 2006), rejected this claim, stating there is no right to have a jury determine

identity in prior convictions.  (App. J at 22.)

The *Nunn* court addressed the defendant's contention that the prior conviction exception

set forth in *Apprendi v. New Jersey*, 530 U.S. 455 (2000), was "constitutionally indefensible."

*Nunn*, 158 P.3d at 225.  In *Apprendi*, the Supreme Court held: "Other than the fact of a prior

conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.

In acknowledging the exception for prior convictions, it relied upon its prior decision in

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which held that recidivism need not

be charged in an indictment in order for a judge to use prior convictions to enhance a defendant's

sentence.  In *Apprendi*, the Supreme Court declined to overrule *Almendarez-Torres* despite

concluding that it was "arguable" that the decision in *Almendarez-Torres* may have been

"incorrectly decided."  However, the Supreme Court has not overruled *Almendarez-Torres* and

has continued to recognize the prior conviction exception.  *See United States v. Booker*, 543 U.S.

220 (2005).  Thus, *Apprendi* did not require the jury to determine whether Petitioner had prior

convictions which could be used to enhance his sentence.  As such, the trial court's ruling was

neither contrary to, nor an unreasonable application of, clearly established Supreme Court

precedent.  Rather, it was legally consistent with *Apprendi* and *Almendarez-Torres*.

The *Nunn* court also analyzed the defendant's contention that Colorado's habitual

criminal sentencing scheme requires the trial court to make findings of fact that are distinct from

and in addition to the fact of any alleged prior condition.  *Nunn*, 158 P.3d at 225–28.  The *Nunn*

17

court held that *Apprendi's* prior conviction exception extends to the additional statutory factual

findings for each prior conviction necessary to support a habitual criminal sentence: (1) that each

prior conviction was separately brought and tried; (2) that they arose out of separate and distinct

criminal episodes; and (3) that the accused was the person named in each prior conviction.

*Nunn*, 148 P.3d at 226–28.

The *Nunn* court analyzed the United States Supreme Court decision in *Shepard v. United States*, 544 U.S. 13 (2005), where the Court limited the documents related to a prior conviction

that may properly be examined by a sentencing court for purposes of a sentence enhancement.

The *Shepard* Court, in addition to construing the legislative intent evinced in the governing

enhancement statute, evaluated whether judicial fact-finding based on a police report violated the

*Apprendi* rule.  In a plurality opinion, the *Shepard* Court held that the sentencing court could not

consider police reports to determine if a prior conviction arising from a guilty plea involved a

burglary of a building or enclosed space so as to support an enhanced sentence.  *Shepard*, 544

U.S. at 15–17.  The *Shepard* Court concluded that under *Apprendi* judicial fact-finding should be

limited to facts that "a prior conviction 'necessarily' involved [or] a prior plea necessarily

admitted . . . ."  *Shepard*, 544 U.S. 23–24 and n.4.  Otherwise, "[i]f the sentencing court were to

conclude, from its own review of the record, that the defendant . . . actually committed a generic

burglary, . . . the defendant [could] challenge this conclusion as abridging his right to a jury

trial[.]"  *Id.* at 24.  The *Shepard* Court explained:

> [T]he Sixth and Fourteenth Amendments guarantee a jury standing between a
> defendant and the power of the state, and they guarantee a jury's finding of any
> disputed fact essential to increase the ceiling of a potential sentence.  While the

18

> disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to . . . *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute.

*Id.* at p. 25.

The *Shepard* Court concluded, however, the sentencing court could consider statutory elements, charging documents, and judicial records such as jury instructions, bench trial court rulings, plea agreements and plea transcripts. *Id.* 15–17, 20, 23, 26. This implicitly suggests that there are matters that are (1) so closely tied to "the conclusive significance of a prior judicial record," or (2) so unlike "the findings subject to . . . *Apprendi*" as to properly be encompassed within the prior conviction exception. *Shepard*, 544 U.S. at 25.

The identification issue raised by Petitioner meets this criteria. First, it is not an "*Apprendi*-like" fact because it is part and parcel of the prior conviction itself and it requires no subjective determinations regarding the circumstances of the prior or current offenses. Second, although the prosecution may present evidence apart from the prior conviction records, the evidence concerning the defendant's identity will be largely presented in official records generated as a result of the prior conviction proceedings. Determination of the identification issue does not invoke the judicial fact-finding concerns present in *Shepard*.

The *Nunn* court found that the "'use of a prior conviction to enhance a defendant's sentence presupposes that it is a prior conviction *of him*, and if there is any doubt on that score the judge has to resolve it.'" *Id.*, 148 P.3d at 228 (quoting *United States v. Browning*, 436 F.3d

780 (7th Cir. 2006)). The *Nunn* court also observed that the defendant's identity "is intimately related to the existence of the prior conviction." *Id.* at 227.

The analysis by the CCA is neither contrary to nor an unreasonable application of federal law as determined by Supreme Court. *See* 28 U.S.C. § 2254(d). Thus, Petitioner is not entitled to habeas corpus relief on this ground.

**B.      *Claims Four through Ten***

In Claims 4 through 10, Petitioner alleges his trial counsel failed to take various actions on his behalf. (Application at 19–20.) The court construes these claims as claims for ineffective assistance of counsel. As set forth above, to establish that his trial counsel was ineffective, Petitioner must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See Strickland*, 466 U.S. at 687-88. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If Petitioner fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim must be dismissed. *See id.* at 697.

The CCA identified and relied on *Strickland*. (App. J. at 9–10.) As such, Petitioner can prevail only if the CCA unreasonably applied *Strickland* to Petitioner's claims. In Claim 4,

20

Petitioner claims that his counsel failed to object to the trial court's limiting instruction that he claims expanded the purpose for which the jury could consider other acts evidence beyond the purposes for which the court had admitted the evidence. (Application at 19.)  Petitioner claims the trial court admitted the evidence for the purposes of intent, lack of abandonment of intent, and identification, but in its limiting instruction included the purposes of method of operation and knowledge. (*Id.*)  In Claim 5, Petitioner alleges counsel failed to challenge a prospective juror for cause. (*Id.*)  He maintains the juror was an optometrist who would have used "his personal knowledge "of the victim[']s eyesight ability to judge her credibility to identify the robber based upon the eyeglasses he prescribed." (*Id.*)  Petitioner's conclusory allegations are insufficient to meet the prejudice prong of *Strickland*. *Snyder v. Addison*, 89 Fed. App'x 675, 681 (10th Cir. 2004) (citing *United States v. Mealy*, 851 F.2d 890, 908 (7th Cir.1988); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  Accordingly, Petitioner is not entitled to relief on Claims 4 and 5.

In Claim 6, Petitioner alleges counsel failed to obtain the prior conviction records of a prosecution witness in order to impeach the witness. (Application at 19.)  The CCA found Petitioner failed to demonstrate any prejudice, as "[e]vidence of identity and method of operation had been presented through the prosecutor's witness's in-court identification and the conviction in the 1979 case that was disclosed when defendant testified." (App. J at 15–16.)  Petitioner's conclusory allegations that the witness's alleged prior convictions would have impeached his in-court identification of the Petitioner are insufficient to meet the prejudice prong of *Strickland*. *Snyder*, 89 Fed. App'x at 681.  Petitioner's Claim 6 fails.

In Claim 7, Petitioner alleges counsel erroneously withdrew a tendered instruction for the lesser-included offense of attempted simple robbery.  (Application at 19.)  Again, Petitioner's conclusory allegation is insufficient to meet the prejudice prong of *Strickland*.  *Snyder*, 89 Fed. App'x at 681.  Moreover, the CCA found Petitioner "provided no evidence to establish that defense counsel's decision to withdraw the attempted robbery jury instruction was other than a tactical decision."  (App. J at 14.)  The CCA correctly determined that Petitioner bears the burden of establishing deficient performance.  *See Strickland*, 446 U.S. at 687.  The CCA's finding that Petitioner failed to present evidence to meet this burden is presumed to be correct and is unrebutted.  § 2254(e)(1); *Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999).  Because Petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy, his claim fails.  *Strickland*, 466 U.S. at 689.

In Claim 8, Petitioner alleges counsel failed to protect his right to an expert on identification issues.  (Application at 19.)  The CCA found that the trial counsel filed a motion to consult with an expert and offer expert testimony on identification issues, but the trial court denied it.  (App. J at 14.)  This finding is presumed to be correct.  § 2254(e)(1).  Petitioner fails to overcome the strong presumption that counsel's efforts fell within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689.  Accordingly, Petitioner's Claim 8 fails.

In Claim 9, Petitioner asserts counsel failed to protect his right to suppress identification testimony.  (Application at 19.)  He asserts counsel failed to subpoena the identifying witness for

the suppression hearing, and that counsel's mid-trial request for a suppression hearing was

denied as untimely.  (*Id.*)  On this issue, the CCA found:

> Trial counsel testified that he was not able to subpoena the witness, but then
> decided to move to suppress the witness's in-court identification.  Trial counsel
> stated: "I think the Court has enough evidence in front of it to rule that the lineup
> for [the witness] was impermissibly suggestive . . . without [the witness] even
> taking the stand, because the lineup is just so outrageous."  The court found the
> lineup was not impermissibly suggestive.  Although defense counsel's request to
> subpoena the witness may have been untimely, we consider this decision both
> reasonable and tactical.  The record reflects that defense counsel believed that the
> lineup used by the witness was inadmissible.

(App. J at 14-15.)

A claim that admission of identification evidence violated an applicant's right to due

process requires a two-tier analysis.  First, the court must find that the procedure was

unnecessarily suggestive.  *Grubbs v. Hannigan*, 982 F.2d 1483, 1489 (10th Cir. 1993).  If so, the

court then must weigh the corrupting influence of the suggestive procedure against the reliability

of the identification itself.  *Id.* at 1489-90 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114

(1977)).  "The two prongs of the inquiry should be made separately; it is necessary to reach the

second prong only if the procedure was impermissibly suggestive."  *Johnston v. Makowski*, 823

F.2d 387, 391 (10th Cir. 1987).

The Supreme Court has clearly established the factors to be considered for the second

prong.  *See Manson*, 432 U.S. at 114; *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).  However,

it has not articulated what factors might be relevant to the first prong.  Consequently, provided a

state court makes an initial finding on the suggestiveness of the identification procedure, its

determination cannot be regarded as contrary to clearly established Supreme Court precedent.

*See Lockyer v. Andrade*, 538 U.S. at 73–74 (state court's determination that a particular sentence for a term of years did not violate Eighth Amendment not contrary to clearly established federal law where Supreme Court case law lacked clarity on particular factors to be employed).  A federal habeas court can set aside the state court's determination of the first prong only where, presuming the correctness of the state court findings, it finds the determination to be objectively unreasonable.  28 U.S.C. § 2254(e)(1); *Lockyer*, 538 U.S. at 76.

"Folding this analysis into an ineffective assistance of counsel claim, the first question is whether trial counsel was deficient here for failing to move for the suppression of the in-court identifications."  *Snow v. Sirmons*, 474 F.3d 693, 721 (10th Cir. 2007).  "If so, the second question is whether the failure to take such action prejudiced [the applicant], i.e., whether 'there is a reasonable probability that, but for counsel's unprofessional error[ ], the result of the proceeding would have been different.'"  *Id.* at 720–21 (quoting *Strickland*, supra).  "In this regard, [an applicant] must show 'he would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted.'"  *Id.* at 721 (quoting *Thomas v. Varner*, 428 F.3d 491, 502 (3rd Cir. 2005)).

The CCA rejected Petitioner's claim, finding counsel's untimely request to subpoena the witness "reasonable and tactical."  (App. J at 17.)  As such it cannot be a grounds for a claim of ineffective assistance of counsel.  *Snow*, 876 P.2d at 295 (citing *Strickland*, 466 U.S. at 694).  Moreover, the trial court found the lineup was not unnecessarily suggestive.  This finding is presumed to be correct, and Petitioner fails to rebut this presumption by clear and convincing evidence.  § 2254(e)(1).  Further, Petitioner fails to indicate how the identification witness's

presence would have affected the trial court's determination with regard to this finding.

Petitioner has failed to allege or establish that he likely would have prevailed on the suppression

motion if the witness had testified, and that, having prevailed, there is a reasonable likelihood he

would not have been convicted. *Snow*, 474 F.3d at 721. Petitioner has not established deficient

performance or prejudice under the *Strickland* standard. Accordingly, Claim 9 fails.

In Claim 10, Petitioner asserts counsel failed to introduce the 911 recording for the

purpose of suppressing identification testimony. The CCA found:

> At the hearing, defendant asked defense counsel why he did not play the 911 tape:
>
> | Counsel: | I didn't think you were going to testify at trial. |
> |---|---|
> | Defendant: | Why not? |
> | Counsel: | Because I thought we had reached an agreement that you weren't going to testify at trial. |
> | | . . . . |
> | Defendant: | . . . You didn't suppress any witness identification, didn't play the 911 tape, didn't get an expert. No way to shoot down anything. |
> | Counsel: | I thought my opinion, at the time, was that all may have been true, but that we were winning. I thought [the prosecutor's evidence] had been shot down and that was the opinion of the team. |
>
> Therefore, the record supports a determination that counsel's decision not to play the 911 tape was reasonable.

(App. J at 15–16.)

"The reasonableness of counsel's actions may be determined or substantially influenced

by the defendant's own statements or actions. Counsel's actions are usually based, quite

properly, on informed strategic choices made by the defendant and on information supplied by

the defendant." *Strickland*, 466 U.S. at 691. The CCA determined defense counsel's decision

not to introduce the 911 tape was reasonable because he believed defendant was not going to

testify, and, therefore, counsel's performance did not fall below professional standard or affect the outcome of the trial. (App. J. At 15–16.) Petitioner has failed to show the state courts' decisions were contrary to clearly established federal law or that they involved an unreasonable application of clearly established federal law. *Williams*, 529 U.S. at 404–05. Accordingly, Petitioner's Claim 10 fails.

WHEREFORE, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the habeas corpus application be DENIED and the action be DISMISSED WITH PREJUDICE.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and

26

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, Petitioners waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 29th day of December, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge